JOHN N. SHATTUCK *vs.* FRANK C. BILL.

Middlesex. March 29. — May 11, 1886. W. ALLEN & HOLMES, JJ., absent.

In an action for an illegal arrest, made by authority of a certificate issued by a magistrate upon the affidavit of the clerk of the defendant's attorney, evidence is admissible, on the issue of the authority of the clerk to act in the matter, of the presence and conduct of the defendant at the hearing, after the arrest, upon the application of the plaintiff to take the oath for the relief of poor debtors, although such hearing was subsequent to the date of the writ in the action for the illegal arrest.

The authority of an attorney at law to collect a debt does not cease on his obtaining a judgment and execution, and if, by his procurement, or that of his clerk acting within the general scope of his employment, the judgment debtor is illegally arrested, the principal of the attorney is liable therefor.

TORT for an illegal arrest. Trial in the Superior Court, before *Rockwell,* J., who allowed a bill of exceptions, in substance as follows:

It appeared that Bill brought an action against Shattuck in the Superior Court in Suffolk County, and, after trial before a jury, recovered judgment. The action was brought by one Way, an attorney at law, and he conducted the case at the trial for

Bill. Execution was issued to said attorney and was in his office. One Clarence F. Eldridge, who was and had been for about three years a clerk in general employ in the attorney's office for him, and who assisted the attorney at the trial, seeing the execution in the office and deeming it needed attention, went before a master in chancery for Suffolk County and applied for a certificate, and made affidavit, in the form provided by statute, under the Pub. Sts. *c.* 162, § 17, *cl.* 5, and the master annexed to the execution his certificate authorizing the arrest of Shattuck, as well as the said affidavit of Eldridge. Shattuck was described in the execution as of Natick, in the county of Middlesex, and it appeared that his residence was there and that he had no usual place of business in the county of Suffolk. Eldridge placed the execution in the hands of a deputy sheriff, and caused the arrest of Shattuck thereon, and he was taken by the deputy sheriff before the same master in chancery for Suffolk County, when he recognized in the usual form prescribed by the provisions of said chapter 162.

Eldridge, who was called by Shattuck, testified that he made said affidavit, procured said certificate, and caused the arrest, without the knowledge of, or any instruction from, said attorney, or from Bill.

Bill testified that he did not specially authorize his attorney to make said affidavit or cause said arrest, and that he did not give any instruction to any one about making said affidavit or procuring such certificate or arrest, and that he had no knowledge of either of them until after this action was commenced.

Shattuck gave notice of his application to take the oath for the relief of poor debtors, and hearings were had ; and he offered evidence tending to show the presence and acts of the defendant at said hearings, which were had after the date of the writ in this action, as competent to prove authority on the part of Eldridge from the defendant to make said affidavit and cause said arrest in his behalf. To the admission of this evidence the defendant objected, but the judge admitted it.

At the close of the evidence the defendant requested the judge to instruct the jury as follows : " 1. If a clerk in the office and employ of the attorney of record in the original suit, in which judgment was obtained and the execution was issued thereon,

without the knowledge and without any instructions from said attorney or from the defendant in this action, the plaintiff in the original action, so to do, applied to a master in chancery, and said master thereupon received such application and annexed the affidavit and his certificate to the execution, and on account thereof, and, without any knowledge on the part of the defendant that the arrest was to be made, this plaintiff was arrested, the plaintiff cannot recover.

" 2. If the attorney of record in the original action, in which judgment was obtained and the execution was issued thereon, without any instructions from or knowledge on the part of the defendant in this action, the plaintiff in the original action, so to do, applied to a master in chancery, and said master thereupon received such application and annexed the affidavit and his certificate to the execution, and, on account thereof and without any knowledge on the part of this defendant that the arrest was to be made, this plaintiff was arrested, the plaintiff cannot recover."

The court refused so to rule, and instructed the jury as follows : " The arrest was illegal. The plaintiff for this illegal arrest may have an action against the person who made the affidavit and applied for and obtained the certificate, to recover at least nominal damages, and actual damages if any are proved, or against the principal, if any, for whom 'said person was the agent in the transaction, acting under the direction of his principal. The plaintiff contends that this affidavit was made by Eldridge, a clerk in the office of Mr. Way, the attorney of record having the execution for his client, and that Bill is liable in this action for damages occasioned by the action of his attorney through the act of his clerk in his office. Some time has been spent in this case by evidence tending to show that Bill, who was the plaintiff in the original action against the present plaintiff, knew of and authorized the application for the certificate and the arrest of the plaintiff in this action. If it is proved that Bill directed or had knowledge of the certificate and arrest, he is liable in this action ; and if the jury are satisfied that the certificate was made and the arrest procured by Mr. Way, the attorney of the plaintiff in the original action, then the defendant is liable for nominal damages, and for actual damage too, if proved."

The jury found for the plaintiff in the sum of $387.50; and the defendant alleged exceptions.

*E. M. Bigelow,* for the defendant. 1. The trespass was a transitory, almost a momentary one. It began with the arrest, and ended with the recognizance. The recognizance was void. *Newmarket National Bank* v. *Cram,* 131 Mass. 204. *Smith* v. *Bean,* 130 Mass. 298. *Learnard* v. *Bailey,* 111 Mass. 160. *McGregor* v. *Crane,* 98 Mass. 530.

2. The only persons concerned in this trespass were Eldridge, the unauthorized clerk, the officer, and the master. Such a trespass cannot be ratified by anybody, so as to make the ratifier a trespasser. 2 Greenl. Ev. § 68. *Wilson* v. *Tumman,* 6 M. & G. 236. *Woollen* v. *Wright,* 1 H. & C. 554. *Slackford* v. *Austen,* 14 East, 468, 472. *Campbell* v. *Phelps,* 17 Mass. 244, 246. *Turner* v. *Sisson,* 137 Mass. 191.

It is only continuing trespasses, as where property has been obtained by trespass and retained, that can be ratified at all, and even in these cases it is extremely doubtful whether the ratifier becomes a trespasser *ab initio,* or only for subsequent acts. Miller, J., in *Lovejoy* v. *Murray,* 3 Wall. 1, 9.

3. When the notice to take the poor debtor's oath was served upon Bill, it was competent for him to appear before the master at the time and place appointed, to see what it meant, and even to examine the debtor, without being a trespasser. If the affidavit and certificate had been before a proper officer, he could (the action perhaps would) have ratified the proceeding so as to protect Eldridge from being a trespasser in causing an unauthorized arrest, but not to make himself a trespasser. But the whole force of this action, on the part of Bill, is exhausted and spent when we have extracted this meaning out of it. The evidence objected to, therefore, should have been excluded. *Woollen* v. *Wright, ubi supra.* Besides, there is no evidence that Bill knew what master took the affidavit and annexed the certificate; therefore there could be no ratification. 2 Greenl. Ev. § 66, and cases cited. Furthermore, the application to take the oath, the notice thereon, and any proceedings thereon, were clearly *coram non judice* and void, like the recognizance.

4. Eldridge, as a clerk in Way's office, had no authority to make the affidavit and cause the arrest. *Knight* v. *Sampson,* 99

Mass. 36, 38, per Gray, J., and cases cited. The instruction first requested should, therefore, have been given.

5. Even Way himself had no authority to do anything further for his client without further instructions. He had conducted the original suit to its termination, and had obtained judgment and execution. There was no attachment in the original action, no bail to pursue, no appeal to be taken, no writ of error or review to be brought. He had done his work and was entitled to his fees. *Tipping* v. *Johnson*, 2 B. & P. 357. *Savory* v. *Chapman*, 11 A. & E. 829. *Smith* v. *Keal*, 9 Q. B. D. 340, 354. *Kellogg* v. *Gilbert*, 10 Johns. 220. *Lewis* v. *Gamage*, 1 Pick. 347. *Eliot* v. *Lawton*, 7 Allen, 274. *Brown* v. *Kendall*, 8 Allen, 209. Pub. Sts. *c.* 159, § 42.

6. If he had a lien upon the judgment and execution for his fees, and had undertaken to collect them by arresting the debtor, and had committed the same blunder Eldridge committed, he and not his client ought to suffer. *Smith* v. *Keal*, *ubi supra.*

The second instruction prayed for ought, therefore, to have been given.

The plaintiff's own evidence proved the facts upon which the first prayer for instruction was predicated, and had no tendency to prove anything else. And even if there was any evidence tending to prove anything else, a party has a right, upon proper requests, to have the law applicable to his view of the facts clearly stated to the jury.

7. The instruction given was erroneous for want of evidence, as well as of law. *Smith* v. *Keal*, *ubi supra.* *Wilson* v. *Tumman*, *ubi supra.* *Woollen* v. *Wright*, *ubi supra.*

*P. H. Cooney*, (*H. G. Sleeper* with him,) for the plaintiff.

DEVENS, J. The plaintiff resided in Middlesex County, and had no usual place of business in Suffolk County. The application for a certificate authorizing the arrest was made before a magistrate in Suffolk, and it is conceded that the arrest made by authority of this certificate was illegal. Pub. Sts. *c.* 162, § 17. As the defendant employed the attorney in whose custody the execution was, if he authorized the arrest, either in terms or by the directions which are properly to be implied from the employment of the attorney and the authority conferred, he would

be responsible for the wrong done in the performance of the duty entrusted to his agent. Story on Agency, § 452. *Moore* v. *Fitchburg Railroad*, 4 Gray, 465.

The plaintiff, after his arrest, gave notice of his intention to take the oath for the relief of poor debtors; and evidence was offered of the presence and conduct of the defendant at these hearings, as tending to prove authority from him to make the affidavit and cause the arrest on his behalf. To the admission of this evidence the defendant has no just ground of exception. If the whole proceeding in relation to the arrest was without authority from the defendant, it is not reasonable to suppose that he would take part in opposition to the application by the plaintiff to relieve himself therefrom; and his acts in relation thereto, although occurring after the arrest, had a tendency to show that it was initiated by his authority almost as directly as if he had thus expressly asserted it. *Collett* v. *Foster*, 2 H. & N. 356.

The affidavit upon which the certificate was founded was, in fact, made by a clerk in the attorney's office; and the defendant requested an instruction that, " if a clerk in the office and employ of the attorney of record in the original suit, in which judgment was obtained and execution issued thereon, without the knowledge and without any instructions from said attorney, or from the defendant in this action, the plaintiff in the original action, so to do, applied to a master in chancery, and said master thereupon received such application and annexed the affidavit and his certificate to the execution, and on account thereof, and, without any knowledge on the part of the defendant that the arrest was to be made, this plaintiff was arrested, the plaintiff cannot recover." Unless it is true that the attorney himself, who has in his hands an execution to collect, cannot proceed to levy it by arrest of the person of the defendant without some special authority or direction of his client, to have given this instruction would have been erroneous, and have led to grave misunderstanding. There was evidence that the clerk, Eldridge, who made the affidavit, was in the general employ of the attorney, and had assisted him in the trial of the case which had resulted in the judgment on which execution had issued; and that he, deeming that the execution needed attention, had

therefore made the necessary affidavit, and placed the execution in the hands of a deputy sheriff. Even if the clerk had received no special instructions from the defendant or his attorney, it might well have been proved to the satisfaction of the jury, that, in taking the steps he did, he had acted by virtue of a general authority from the attorney, and as managing clerk entrusted with the collection of claims which were deposited in the office for that purpose, and that his acts in this matter are to be treated as those of the attorney himself.

That this was the view of the presiding judge is quite clear. His instruction permitted the plaintiff to recover only upon one or the other of two grounds: first, upon the ground that the defendant himself had actually directed the arrest, or had had antecedent knowledge of the certificate and the arrest; or secondly, upon the ground that "the arrest had been procured by Way, the attorney of the plaintiff in the original action, holding the execution for collection." Upon the first of these grounds, had the fact been proved, we do not understand the defendant to contend that he would not be liable; but he does contend, and such was in substance the second request for an instruction made by him, that he was not responsible for the act of the attorney in the original action, in applying to the master for a certificate which would authorize the arrest, and in proceeding to make it, if these acts were done without the knowledge of or directions from the defendant himself.

While it does not clearly appear from the bill of exceptions what were the instructions as to the liability of the defendant for the acts of the clerk of the attorney, as the only ground, except that of express authority, upon which the plaintiff was allowed to recover was by reason of the act of the attorney, we must assume, in favor of the defendant, that the acts of the clerk were treated as his acts only if done within the general scope of his employment, and that knowledge of, or instruction to do, the particular act by the attorney was not necessary. This was correct. Details of a law business, especially such as that of the collection of claims, are often not attended to by the attorney, but entrusted to subordinates, whose acts in the conduct of a business are his, so far as civil responsibility therefor, either on his own part or that of his clients, is concerned.

But, if this be conceded, the defendant still contends that the attorney had no authority himself, without express direction, to take the necessary steps, and to proceed to arrest the plaintiff.

Certain English cases have been cited by the defendant to the effect that the authority of an attorney terminates with obtaining judgment and execution. They do not require comment, except to say that they proceed upon the ground that all the attorney is required to do by his warrant is then terminated. But the warrant of attorney is not used in this Commonwealth, and in this respect there is a difference between the English practice and our own. Nor does it appear that obtaining the execution is now recognized in England as the termination of the duty of the attorney, if it was so formerly. In *Collett* v. *Foster, ubi supra,* the principal was held liable for the act of his attorney in causing a plaintiff improperly to be arrested on *ca. sa.,* no order to this effect having been given by him. In *Smith* v. *Keal,* 9 Q. B. D. 340, 353, it is said by Lindley, J.: "It is the duty of a solicitor to conduct the action in the ordinary way, and, if his client obtains judgment, it is his duty to do such acts as may be necessary to obtain the fruits of the judgment. If a *fi. fa.* is necessary he must issue it, and make the proper indorsement on the writ; and if he makes a mistake in so doing his client is responsible." In *Butler* v. *Knight,* L. R. 2 Ex. 109, 113, it is said, in substance, that the distinction between powers of attorney before and after judgment is less marked than formerly. The attorney has a reasonable discretion, in the attainment of the object in view, in the selection of remedies. It would be mischievous to hold, where there is any evidence that the authority of the attorney was continued after judgment, that the attorney had not authority to act according to the exigency of the case.

It has always been held in this country that an attorney is invested with a large discretionary power in everything pertaining to the collection of a demand entrusted to him for that purpose; and that his client must answer in damages, if injury is occasioned by his conduct in the 'general scope of this employment. While he cannot discharge a debt or an execution without receiving satisfaction, he has control of the selection of the legal remedies and processes which he may deem most effectual in

accomplishing his object. The confidence reposed in him by his client, and the supposed ignorance by the latter of the most appropriate remedies, requires this. *Willard* v. *Goodrich*, 31 Vt. 597, 600. *Jenney* v. *Delesdernier*, 20 Maine, 183. *Fairbanks* v. *Stanley*, 18 Maine, 296. *Turner* v. *Austin*, 16 Mass. 181. *Gordon* v. *Jenney*, 16 Mass. 465. *Caswell* v. *Cross*, 120 Mass. 545. *Carleton* v. *Akron Sewer Pipe Co.* 129 Mass. 40. *Moulton* v. *Bowker*, 115 Mass. 36. *Schoregge* v. *Gordon*, 29 Minn. 367. *Clark* v. *Randall*, 9 Wis. 135.

Proceedings on the execution are proceedings in the suit which the attorney is authorized to bring. *Union Bank* v. *Geary*, 5 Pet. 98, 112. *Erwin* v. *Blake*, 8 Pet. 18, 25. *Flanders* v. *Sherman*, 18 Wis. 575. *Planters' Bank* v. *Massey*, 2 Heisk. 360. *Mayer* v. *Hermann*, 10 Blatchf. 256. It has been held that he may receive seisin on levy of execution, may discharge execution, may direct it to be issued in a particular manner, and may in his discretion take out *fi. fa.* or *ca. sa.*, and cause the defendant to be arrested thereon. *Pratt* v. *Putnam*, 13 Mass. 361. *Langdon* v. *Potter*, 11 Mass. 313. *Corning* v. *Southland*, 3 Hill (N. Y.) 552. *Hyams* v. *Michel*, 3 Rich. (S. Car.) 303.

In *Gray* v. *Wass*, 1 Greenl. 257, it is said by Chief Justice Mellen : " It is admitted that the power of an attorney continues until he has collected the debt which was committed to him for collection." In *Heard* v. *Lodge*, 20 Pick. 53, 59, it is said by Mr. Justice Dewey : " It is within the scope of the powers of the attorney to institute all such further proceedings as are necessary to render the judgment effectual to the creditor in the recovery of his debt. It has been held to be the imperative duty of an attorney in the original action, where the body of the debtor was arrested, to institute a *scire facias* against the bail ; and, if he neglect so to do, he is held responsible." *Dearborn* v. *Dearborn*, 15 Mass. 316.

In the case at bar, the principal was therefore properly held liable for the act of his attorney.          *Exceptions overruled.*