WILLIAM VAIL & another *vs.* HENRY DURANT & another.

An action to recover moneys which are subject to a lien in favor of the defendants cannot be sustained by proof of a discharge of the lien subsequently to the date of the writ.

Commission merchants, who have a lien upon moneys received as the proceeds of goods consigned to them for sale, to secure them against loss upon acceptances and indorsements for the consignors, may properly mingle such moneys with other funds in their hands, and if they have done so, the subsequent assignment of their estate in insolvency will not enable the consignors to maintain an action against them therefor, during the continuance of their liability upon the acceptances and indorsements.

CONTRACT brought to recover moneys received by the defendants as the proceeds of goods consigned to them by the plaintiffs for sale.

At the trial in the superior court, before *Brigham,* J., it appeared that the action was brought for the benefit of Joseph Blair and others, to whom the plaintiffs had assigned their claim against the defendants; and a verdict was returned for the defendants, upon facts which are stated in the opinion. The plaintiffs alleged exceptions.

*T. L. Wakefield,* for the plaintiffs.

*G. H. Preston,* for the defendants.

MERRICK, J. It is stated in the bill of exceptions that the plaintiffs from time to time consigned parcels of leather to the defendants, to be sold by them as commission merchants. They sold all the leather so consigned to them, and realized the proceeds thereof in money. And the balance on this account remaining in their hands on the day of the date of the writ was $3927.78. But they were then under various liabilities to a much larger amount, on notes and drafts indorsed and accepted by them at the request and for the benefit of the plaintiffs, none of which were at the time due and payable. All

these transactions occurred in pursuance of a previous agreement between the parties that the defendants should accept the drafts and indorse the notes of the plaintiffs, who should continue to send them leather to be sold on commission; that the defendants should pay and take up such notes and drafts as they severally matured, using for that purpose the proceeds of the sale of the leather consigned to them, and that, if such proceeds were insufficient to make the payments, the plaintiffs would furnish them with cash to the full amount of the deficiency.

For the whole amount of existing liabilities incurred by them in the course of the business pursued by the parties under that agreement the defendants undoubtedly had a lien upon all the leather consigned to them, and a right to retain the proceeds of the sales of it to meet and pay these liabilities, as the several debts became due, or until they should otherwise be relieved and discharged therefrom. *Stevens* v. *Robins*, 12 Mass. 179. *Wentworth* v. *Day*, 3 Met. 352. 1 Parsons on Con. 84. This indeed is not now denied, but is indirectly conceded by the plaintiffs; for they insist that the lien has been lost by the defendants, either by their insolvency and the consequent assignment of their estate, or by an alleged misappropriation of the funds derived by them from the sale of the leather. The assertion that it has been lost involves and is in effect an admission that it once existed. It is only upon the ground that the lien has been lost that the plaintiffs now claim to be entitled to maintain their action.

But when the writ was sued out and served upon the defendants they had not become insolvent, or taken any steps to secure to themselves the benefit of the act for the relief of insolvent debtors, and certainly they had not up to that time been guilty of any misappropriation of the proceeds of the leather, or of any other funds which had come into their possession; for they had then paid every draft which they had accepted and every note which they had indorsed for the plaintiffs under the above mentioned agreement, severally, as they became due, and therefore at that time the plaintiffs had no cause of action against

them; and for this reason this action cannot be maintained. There is, however, a defence to it, in reference to the question concerning the continuance of the lien upon the leather, and the right of the defendants to retain possession of the funds acquired by its sale, upon much broader grounds.

There is nothing reported in the bill of exceptions which has any tendency to show that the defendants have ever misappropriated any of the money which they received upon sales of the leather consigned to them. They were commission merchants; and in that capacity they acted, and they were dealt with and trusted as such. In the usual and ordinary course of business, a factor does not and is not required to keep the money received upon the sale of goods of different consignors in separate and distinct parcels, but mingles all in a common mass, and with the like funds of his own from whatever source derived. In such case he becomes at once a debtor to his principal, and is liable to an action for the balance shown to be due by his account of sales, immediately after its rendition and without any previous demand. *Clark* v. *Moody*, 17 Mass. 145. The defendants, therefore, in so using and disposing of the money derived from the sales of leather consigned to them for that purpose were guilty of no misappropriation of it; but they would, except for the right to retain it to meet or to indemnify themselves from the liabilities they have incurred for the plaintiffs, have been subject on demand, or upon rendition of their account, to an action for the balance in their hands. If the plaintiffs would have entitled themselves to the right of immediately commencing such action, they should have extinguished these liabilities, or have caused the defendants to be discharged therefrom. But they were allowed to remain, and the defendants are still subject to them. The drafts accepted and notes indorsed by them may be proved by the holders, who are not residents of this commonwealth, at their own pleasure against the estate of the defendants in insolvency, or retained to be enforced by proper legal remedies against them personally hereafter. In the former case, it would be eminently right and equitable that the proceeds of the property provided by the principal debtor for the payment of these

claims should be applied by the defendants, who in this respect are mere sureties, to the enlargement of the fund from which the creditor seeks to obtain payment of his claim. The statute provides that the assignment shall vest in the assignees all the property, real and personal, of the debtor, that it may all con· stitute one common and general fund for the equal benefit and advantage of all the creditors. Gen. Sts. *c.* 118, § 44. If the defendants, upon the sale of the goods consigned, had taken a note therefor, and had retained possession of it until the pro ceedings in insolvency were commenced, the plaintiffs, upon relieving them from their liabilities, might have claimed and recovered the note as their own. *Denston* v. *Perkins,* 2 Pick. 86. *Chesterfield Manuf. Co.* v. *Dehon,* 5 Pick. 7. And there· fore as they had already realized the money, and as no sug· gestion has been made that it was kept separate or could be identified or distinguished from their other moneys, it is impos· sible that the assignment of the debtors' whole estate, or that any of the proceedings in insolvency, could operate as a misappropriation of it.

The payment by the defendants of one of the notes at its maturity, which was after the alleged assignment to Blair and others, and after the commencement of this action, was strictly in conformity to the original agreement, and to the right of the defendants under it. For the balance still in their hands, the plaintiffs may prove its amount as a debt due to them against the estate in insolvency, or, being residents without this commonwealth, they may have their action directly against the defendants, whenever their liabilities upon the drafts accepted and notes indorsed by them now overdue shall be paid or discharged. But until this is done, they have no right to insist upon payment directly to themselves, and therefore they can maintain no action to recover it.       *Exceptions overruled.*